IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02420-CMA-MEH

GREGORY BOUDETTE, and
GARY MICKELSON,

      Plaintiffs,

v.

MATT BUFFINGTON,
GLENN T. GAASCHE,
TOM QUINNETT, and
CITY OF CORTEZ,

      Defendants.

___

**ORDER AFFIRMING THE FEBRUARY 21, 2020 RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**
___

      This matter is before the Court on the Recommendation (Doc. # 110) of United States Magistrate Judge Michael E. Hegarty, wherein he recommends that this Court **grant** Defendants Tom Quinnett and the City of Cortez's Motion to Dismiss (Doc. # 98). Plaintiff Gregory Boudette filed an Objection (Doc. # 111) on March 5, 2020, and Defendants Quinnett and the City of Cortez filed a Response (Doc. # 113) on March 18, 2020. For the following reasons, the Court affirms the Recommendation.

      **I.**      **BACKGROUND**

      Magistrate Judge Hegarty's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See*

28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Mr. Boudette's objections.

This case arises from the seizure of Mr. Boudette's firearms on June 12, 2018. (Doc. # 97 at 10–13.) Prior to June 12, 2018, a United States Drug Enforcement Administration investigation concerning the cultivation and distribution of marijuana ultimately led to the seizure of various items on Gary Mickelson's farm, including Mr. Boudette's firearms. (*Id.* at 4, 9.) Mr. Boudette's seized firearms were kept at the City of Cortez police department. (*Id.* at 10.)

Following the dismissal of criminal charges against Mr. Mickelson, on April 30, 2018, the state court judge presiding over that case ordered that "all property seized in the search of Mr. Mickelson's farm be returned, unless the return of such property would violate state or federal law." (*Id.*)

Mr. Mickelson subsequently called Angela Young, the custodian of seized property held by the Cortez police, and set an appointment to pick up the released property at 1:00 p.m. on June 12, 2018. At the appointed time, Mr. Boudette and Mr. Mickelson went to the Cortez police department to retrieve their property. Upon their arrival, Ms. Young told Mr. Boudette and Mr. Mickelson that the "Southwest [Colorado] Drug Task Force had told her that no firearms would be returned, because Mr. Mickelson was a prohibited possessor." Mr. Boudette responded that he was not a prohibited possessor and demanded the return of all property seized from him. (*Id.*) After disputing Ms. Young's request to see proof of ownership, Mr. Boudette was informed that the property would be returned. (*Id.* at 10–11.)

Mr. Boudette was eventually escorted to the briefing room where Officer Quinnett and another Cortez police officer were sitting. Officer Quinnett informed Mr. Boudette that the "SKS rifle would not be returned until someone provided proof of ownership." All other items seized from Mr. Boudette, including the five other firearms, were then given to Mr. Boudette. Mr. Boudette took physical possession of each item and put the firearms in gun cases that he had brought with him. Officer Quinnett then asked Mr. Boudette to sign a document attesting that Mr. Boudette was the owner of the firearms and would not give possession of any of the returned firearms to Mr. Mickelson. Mr. Boudette signed that document along with a receipt for all the property in his possession. (*Id.* at 11.)

At that point, Officer Quinnett directed Mr. Boudette to leave the firearms, claiming that he was running a background check. The officer assisting Mr. Boudette assured him that a Colorado background check would take only a few minutes. The five firearms, in their cases, were left on a table. (*Id.* at 11–12.)

According to the amended complaint, after several hours of waiting, Mr. Boudette was brought back to the briefing room where Officer Quinnett gave Mr. Boudette a sheet of paper purported to have been sent from the Colorado Bureau of Investigation ("CBI"). The paper stated: "YOUR SUBJECT MAY BE INELIGIBLE TO POSSESS FIREARMS . . . ARRESTED FOR FELONY DRIVING UNDER INFLUENCE/DOA/20140406/ . . . DISPOSITION UNKNOWN." This was followed by another paragraph, which stated the subject was "ineligible to possess firearms at this time due to: . . ." The sentence was unfinished and no reason for ineligibility was set

3

forth. The paper was not a CBI Instacheck firearms transfer denial; it was an interagency communication sent from the Colorado Crime Information Center ("CCIC") at 5:28 p.m. on June 12, 2018. (*Id.* at 12–13.)

After informing Officer Quinnett that the felony charge had been dismissed, Mr. Boudette further explained that there could not have been a pending felony charge because his U.S. passport had been issued subsequent to the arrest referenced in the CCIC communication; and persons with pending felony charges are ineligible for passports. Additionally, Mr. Boudette pointed out that it had been eighteen months since the firearms were initially seized and he was never charged as a prohibited possessor. Officer Quinnett then told Mr. Boudette that he could not have firearms and seized the five firearms from Mr. Boudette. Officer Quinnett gave Mr. Boudette a form for appealing the denial of a firearm transfer and modified the receipts to delete the firearms from the receipt. Mr. Boudette left the station without the five firearms. (*Id.* at 13.) Eventually, all firearms were returned to Mr. Boudette in October of 2018. (*Id.* at 14–15.)

Following an initial dismissal without prejudice, Plaintiffs filed an amended complaint wherein Mr. Boudette raises the following claims of relief:

- **Claim 1** – "Illegal Seizure" – Mr. Boudette alleges that Officer Quinnett wrongfully seized Mr. Boudette's firearms;

- **Claim 2** – "Second Amendment Violation" – Mr. Boudette alleges that Officer Quinnett violated Mr. Boudette's Second Amendment Right to keep arms; and

- **Claim 3** – "Municipal Liability" – Mr. Boudette alleges that the wrongful seizure and other actions taken by employees support a ratification theory of municipal liability.

(Doc. # 97 at 9–16.)

Officer Quinnett and the City of Cortez filed a Motion to Dismiss Plaintiffs' claims against them on September 27, 2019. (Doc. # 98.) The instant Recommendation followed.

## II.     LEGAL STANDARDS

### A.     REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).

**B.     *PRO SE* PLAINTIFF**

Plaintiff Boudette proceeds *pro se*.[1] The Court, therefore, reviews his pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S.*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Nor does *pro se* status entitle a litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

---

[1] The Court notes that only Mr. Boudette responded to the present motion. *See* (Doc. # 107 at 2) ("The gravamen of Boudette's claim against Quinnett is that he seized Boudette's property without probable cause . . . ."). The Court further notes that Mr. Mickelson could not have filed a Response because he does not have standing to assert claims against Officer Quinnett and the City of Cortez, as he does not allege to have been injured by either Defendant. *See* (Doc # 97 at 9–16); *see, e.g.*, *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (in order to have standing under Article III of the Constitution, "[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct . . . .") (citations omitted).

### C. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## III.   DISCUSSION

Magistrate Judge Hegarty determined that Mr. Boudette fails to state a claim against the City of Cortez and Officer Quinnett is entitled to qualified immunity as to Mr. Boudette's claims against him in his individual capacity. Mr. Boudette objects to the Recommendation in its entirety.[2] The Court agrees with Magistrate Judge Hegarty.

### A.   OFFICER QUINNETT IS ENTITLED TO QUALIFIED IMMUNITY

Mr. Boudette alleges that Officer Quinnett violated his Second and Fourth Amendment rights. Officer Quinnett is entitled to qualified immunity as to both claims.

"[Q]ualified immunity . . . is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[2] Defendants assert that many of Mr. Boudette's arguments in his Objection are insufficient to warrant a *de novo* review. Although Mr. Boudette's Objection largely reiterates arguments he made in his Response to Defendants' Motion to Dismiss, the Court will conduct a *de novo* review because Mr. Boudette is proceeding *pro se* in this case.

672 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Public officials are entitled to qualified immunity "in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 864 (10th Cir. 2016) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013)).

Once an official has raised qualified immunity as a defense, the plaintiff must show that: "(1) the public official violated the plaintiff's constitutional rights; and (2) these rights were clearly established at the time of the alleged violation." *Id.* (citation omitted). Courts may consider each factor in the "sequence [the court] deems best in light of the circumstances of the particular case." *Mink v. Knox*, 613 F.3d 995, 1000 n.4 (10th Cir. 2010). The qualified immunity standard, "by design, 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Pahls*, 718 F.3d at 1227 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)).

    1.    <u>Fourth Amendment Claim</u>

In order for a seizure a to be a violation of the Fourth Amendment, the plaintiff must show that the seizure was "unreasonable." *See, e.g.*, *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004). "Although the Fourth Amendment generally requires officers conduct searches and seizures pursuant to a warrant, their conduct may be justified under the 'plain' view exception." *U.S. v. Castorena-Jaime*, 285 F.3d 916, 924 (10th Cir. 2002); *see, e.g.*, *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). Under the plain view exception, an officer may justify a warrantless seizure when three

conditions are met: (1) "the seizing officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) "the item must not only be in plain sight, but its incriminating character must also be immediately apparent"; and (3) the officer must "have a lawful right of access to the object." *U.S. v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993) (quotations omitted).

With respect to the second condition, "[a]n item's incriminating nature is immediately apparent if 'the officer had probable cause to believe the object was contraband or evidence of a crime.'" *Castorena-Jaime*, 285 F.3d at 924 (quoting *U.S. v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996)). Probable cause for a plain view seizure is established if "the facts available to the officer would warrant a man of reasonable caution [to] belie[ve] that certain items may be contraband or stolen property or useful as evidence of a crime; **it does not demand any showing that such a belief be correct or more likely true than false**." *Naugle*, 997 F.2d at 823 (emphasis added). Therefore, "[a] seizing officer need not 'know' or have an 'unduly high degree of certainty' as to the incriminatory character of the evidence under the plain view doctrine. All that is required is a 'practical, nontechnical probability that incriminating evidence is involved.'" *Castorena-Jaime*, 285 F.3d at 924 (quoting *Tex. v. Brown*, 460 U.S. 730, 74 (1983)) (citation omitted).

In the instant case, Officer Quinnett first became involved in the incident at the police station on June 12, 2018, when he met with Mr. Boudette in the briefing room where the firearms were located. (Doc. # 97 at 10, 13.) Officer Quinnett did not violate the Fourth Amendment by viewing the firearms in the police station, because the police

station is a public building, and Officer Quinnett was employed there. As a result, the first condition is met.

As for the second condition, there is no dispute that the firearms were in plain view of Officer Quinnett. However, the Court must decide whether the incriminating character of the firearms was immediately apparent—i.e., whether Officer Quinnett had probable cause to believe the firearms were contraband.

In *U.S. v. Tolbert*, 203 F. Supp. 3d 1139 (D. Kan. 2016), an officer seized a firearm under the plain view exception based upon information he had received from the National Crime Information Center ("NCIC"), which indicated that the defendant had a prior felony charge. The court found that the incriminating character of the firearms was immediately apparent because the officer knew, **based on information received from the NCIC**, the defendant had a prior felony conviction and that felony conviction prohibited the defendant from possessing a firearm. *Id.* at 1144 and 1151. In the instant case, much like the officer in *Tolbert*, Officer Quinnett received information from the Colorado Crime Information Center ("CCIC") stating that there was a felony arrest on Mr. Boudette's record, and he might be ineligible to possess firearms. Accordingly, the facts available to Officer Quinnett would warrant a man of reasonable caution to believe that the firearms were contraband, thereby satisfying the second condition.[3]

---

[3] The Court notes that Mr. Boudette suggests the firearms were not incriminating because Officer Quinnett fabricated the communication. (Doc. # 110 at 19.) Mr. Boudette points to several allegations that he believes support the plausibility of this allegation. However, after considering the supporting allegations as a whole and taking them as true, the Court finds that such allegations fail to plausibly support Mr. Boudette's claim that Officer Quinnett fabricated the communication. *See Iqbal*, 556 U.S. at 678. The Court agrees with Magistrate Judge Hegarty that Mr. Boudette's allegation pertaining to the atypical nature of the transfer denial arguably supports the claim that the communication was not correct, but that does not negate the

Finally, Officer Quinnett had a lawful right of access to the firearms that were on a table in the briefing room at the police station, which is a public building. It is "well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant." *Payton v. N.Y.*, 445 U.S. 573, 586–87 (1980). Furthermore, "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Id.*

Accordingly, the Court finds that all conditions of the plain view doctrine are met, and Mr. Boudette does not plausibly allege a violation of the Fourth Amendment. As a result, Officer Quinnett is entitled to qualified immunity.

2.   Second Amendment Claim

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that a law that prohibited keeping firearms in one's home was invalid and that the Second Amendment conferred an individual right to keep and bear arms for self-defense. "In other words, the Court suggested that the core purpose of the right was to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010) (footnote omitted) (quoting *Heller*, 554 U.S. at 635). The Court also indicated that the right protected by the Second Amendment "is not unlimited." *Id.* at 626. In fact, it emphasized that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of

---

reasonableness Officer Quinnett's reliance on the information to effectuate a seizure. *See Naugle*, 997 F.2d at 823 (finding that probable cause for a plain view seizure does not "demand any showing that [a reasonable] belief be correct or more likely true than false").

firearms by **felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools **and government buildings** . . . ." *Id.* (emphasis added).

The Court has already determined that Officer Quinnett's reasonable belief that Mr. Boudette had a felony conviction justified the seizure of the firearms at issue. *See supra* Section III(A)(1). Because the seizure was constitutional, Officer Quinnett did not violate Mr. Boudette's Second Amendment rights by retaining his firearms. *See, e.g.*, *Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015) ("Lawful seizure and retention of firearms . . . does not violate the Second Amendment. Indeed, this court has held that even the *unlawful* retention of specific firearms does not violate the Second Amendment, because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms." (citation omitted)). Moreover, Magistrate Judge Hegarty correctly observed that Mr. Boudette "failed to point to a clearly established Tenth Circuit or Supreme Court case that would put Quinnett on notice that his seizure of Boudette's firearms based on a potentially false CBI communication would violate Boudette's Second Amendment rights." (Doc. # 110 at 21.) Therefore, Officer Quinnett is entitled to qualified immunity.

B.  **MR. BOUDETTE FAILS TO STATE A MUNICIPAL LIABILITY CLAIM**

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[I]n other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Rather,

"the government as an entity" may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. To prevail on a municipal liability claim, a plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 151 F.3d 1313, 1316 (10th Cir. 1998).

Magistrate Judge Hegarty accurately noted that Mr. Boudette "fails to plausibly allege how the City and/or its officials adopted Quinnett's action of seizing the firearms with more than simple acquiescence," and Mr. Boudette also "fails to allege that any such ratification was the 'moving force' behind Quinnett's seizure of Boudette's firearms." (Doc. # 110 at 23.) However, even if Mr. Boudette had identified a municipal policy, his claims would still fail.

The Court has concluded that Officer Quinnett's conduct did not violate Mr. Boudette's constitutional rights. *See supra* Section III(A)(1)–(2). Without an underlying constitutional violation, Mr. Boudette's municipal liability claim fails as a matter of law. *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) (citing *Monell*, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.")); *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155–56 (10th Cir. 2001) (a municipality "cannot be held liable where, as here, the officers did not commit a constitutional violation.").

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

1. The February 21, 2020, Recommendation of United States Magistrate Judge (Doc. # 110) is AFFIRMED AND ADOPTED as an order of this Court;

2. Defendants Tom Quinnett and the City of Cortez's Motion to Dismiss (Doc. # 98) is GRANTED;

3. All claims against Officer Quinnett and the City of Cortez are DISMISSED WITH PREJUDICE. The claims are dismissed with prejudice because the Court has already provided Mr. Boudette an opportunity to amend the claims at issue, *see* (Doc. # 96 at 40–41), and it is "obvious that [Mr. Boudette] cannot prevail on the facts [he] allege[s] and it would be futile to give [him] [another] opportunity to amend." *Guy v. Lampert*, 748 F. App'x 178, 181 (10th Cir. 2018) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010)); and

4. Plaintiffs' claims against Defendants Buffington and Gaasche remain pending.

5. The caption on all subsequent filings shall reflect the removal of Defendants City of Cortez and Officer Quinnett as a Defendants in this case.

DATED: August 11, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge